■ In the Matter of BABY BOY C. EPISCOPAL SOCIAL SERVICES, Respondent; DOUGLAS B., Appellant. [787 NYS2d 110]—

In a proceeding pursuant to Social Services Law § 384-b for the guardianship and custody of a child, Douglas B. appeals from (1) a fact-finding order of the Family Court, Kings County (Elkins, J.), dated April 25, 2003, which, after a hearing, determined that his consent was not necessary for the adoption of the child, and (2) a dispositional order of the same court dated May 14, 2003, which, without a hearing, authorized the Commissioner of Social Services of the City of New York and the petitioner, Episcopal Social Services, to consent to the adoption of the child by the person who had been approved as the child's adoptive parent.

Ordered that the appeal from the fact-finding order dated April 25, 2003, is dismissed, without costs or disbursements, as that order was superseded by the dispositional order dated May 14, 2003, and comes up for review on the appeal from the dispositional order; and it is further,

Ordered that the dispositional order dated May 14, 2003, is affirmed, without costs or disbursements.

Contrary to the father's contentions, his testimony at the fact-finding hearing supports the Family Court's conclusion that the petitioning agency, Episcopal Social Services (hereinafter the agency), established by clear and convincing evidence that pursuant to Domestic Relations Law § 111 (1), his consent was not required for the adoption of the subject child, and therefore the guardianship and custody of the child could be transferred to the agency pursuant to Social Services Law § 384-b for the purpose of adoption (see *Matter of Kasiem H.*, 230 AD2d 796, 797 [1996]; *Matter of Christy R.*, 183 AD2d 434 [1992]; cf. *Matter of Raven Carol L.*, 295 AD2d 610, 611 [2002]).

An unwed father's interest in a relationship with his child requires "both a biological connection and full parental responsibility; he must both be a father and behave like one" (*Matter of Raquel Marie X.*, 76 NY2d 387, 401 [1990], *cert denied sub nom. Robert C. v Miguel T.*, 498 US 984 [1990]). Where a child is placed for adoption at or near birth, the father's interest can be lost entirely or significantly diminished if he fails to "grasp such opportunities for a significant relationship" in a timely manner, or fails to take available legal steps to substantiate the relationship (*id.* at 402; *see Matter of Robert O. v Russell K.*, 80 NY2d 254, 262 [1992]). The father must promptly avail himself of "all the possible mechanisms for forming a legal and emotional bond with his child" and "manifest his ability and willingness to assume custody of the child" (*Matter of Raquel Marie X., supra* at 402-403; *see Matter of Robert O. v Russell K., supra* at 262). The promptness of the father's actions is important because of the child's need for permanence and stability (*see Matter of Robert O. v Russell K., supra* at 264; *Matter of Raquel Marie X., supra* at 402-403). Factors to consider include the father's "public acknowledgement of paternity, payment of pregnancy and birth expenses, steps taken to establish legal responsibility for the child, and other factors evincing a commitment to the child" during the six months immediately preceding the child's placement for adoption (*Matter of Raquel Marie X., supra* at 408).

Here, the evidence reveals that the father abandoned the mother during her pregnancy and moved to North Carolina in August of 1999, at which point he stopped providing her any financial support. He offered to pay for an abortion, which she refused. Three months later, he returned to New York to see if the mother planned to have an abortion, but made only minimal efforts to locate the mother, which proved to be unsuccessful.

Although the child was born on February 4, 2000, the father's first contact with the mother since August 1999 was in April or May of 2000 when the mother located him and told him to file a paternity petition. Although he claims to have filed a petition with his sister's assistance, the petition was dismissed when he failed to go to court. On June 20, 2000, he went to the agency to ascertain information about the child and to arrange visitation, but was arrested shortly thereafter and imprisoned in Riker's Island for eight months until February 22, 2001. While in prison, he made no effort to contact the agency until his sister, on her own accord, provided him with contact information. After two or three months of imprisonment, he called the agency caseworker to find out how the child was doing. Imprisonment,

however, does not excuse a parent from maintaining contact with a child or agency (*cf. Matter of Thomas Z.,* 4 AD3d 372 [2004]; *Matter of Tashara B.,* 299 AD2d 356 [2002]; *Matter of Ravon Paul H.,* 161 AD2d 257 [1990]). He did nothing to further the paternity petition or file for custody.

After his release, the father inexplicably waited until May 9, 2001, to file a new paternity petition. He first saw the child when the child was one year old, and continued to visit him once a week. The child had been in state custody since he was two weeks old and had been living with his preadoptive foster mother since he was about three months old. The father did not provide the agency with financial support for the child because he did not believe he had any obligation to provide support while the child was in the agency's custody. Even after receiving an order of filiation, he never filed for custody of the child.

These actions fall far short of the promptness expected of an unwed father to assert an interest in his child, and failed to demonstrate a willingness and ability to be a custodial parent (*see Matter of Raquel Marie X., supra; Matter of Robert O. v Russell K., supra; Matter of John E. v Doe,* 164 AD2d 375 [1990]). Accordingly, the record supports the Family Court's determination that it was in the child's best interests to be committed to the guardianship and custody of the agency and to be adopted by his foster mother. S. Miller, J.P., Krausman, Mastro and Fisher, JJ., concur.